# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**ROBERT CHARLES HYATT,**

      **Plaintiff,**

                                **Civil Action 2:11-cv-00685**
**vs.**                                  **Judge Michael H. Watson**
                                  **Magistrate Judge Elizabeth P. Deavers**

**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

## REPORT AND RECOMMENDATION

## I.  INTRODUCTION

Plaintiff, Robert Charles Hyatt, filed this action seeking review of a final decision of the Commissioner of Social Security  ("Commissioner") denying his applications for social security disability insurance benefits and supplemental security income.  In his applications, which he filed on October 3, 2007, Plaintiff alleges disability since July 20, 2007, due to a back injury and left side arthritis.  (R. at 113–15, 116–23, 144.)

After initial administrative denials of his claim, Plaintiff appeared and testified at a hearing before an Administrative Law Judge ("ALJ") on February 24, 2010.  (R. at 24–39.)  A vocational expert also testified at the hearing.  (R. at 25–26, 39–42.)  On May 24, 2010, the ALJ issued an unfavorable decision denying benefits.  (R. at 7-15.)  This decision became the final decision of the Commissioner when the Appeals Council denied review on June 4, 2011.  (R. at 1–3.)

Plaintiff thereafter timely commenced this civil action.  In his Statement of Errors,

Plaintiff contends that he suffers from a severe mental impairment; that the ALJ failed to provide a proper hypothetical question to the vocational expert; and that the ALJ erred in assessing his credibility.  Following the Commissioner's Memorandum in Opposition, the matter is now ripe for decision.  For the reasons that follow, it is **RECOMMENDED** that the Court **AFFIRM** the decision of the Commissioner.

## II.  PLAINTIFF'S TESTIMONY

Plaintiff, who was fifty eight years old at the time of the administrative hearing, has a bachelor's degree in sociology and criminology.  (R. at 24, 150.)  He has past relevant work as a self-employed caterer, self-employed handy man, security guard, and substitute teacher.  (R. at 145, 162–66.)

At the February 2010 administrative hearing, Plaintiff testified that he had stopped working as a caterer because of his back problems.  (R at 26.)  He stopped working as a handyman in July 2007 because his employers asked him to do physical work and he "just couldn't do it."  (R at 27.)  Plaintiff testified that he worked as a substitute teacher during 2008 and 2009 for multiple school districts.  (R. at 27–29.)  He indicated that during this period he was fired from the Columbus school district because of an argument with the principal.  (R. at 28.)  He also suggested that he no longer worked at the Reynoldsburg school district because he had received complaints from children for being too strict.  (R. at 29.)  Plaintiff reported that he had stopped teaching for Pickaway County because he was sleeping in class due to his sleep apnea.  (R. at 30.)  Plaintiff testified that he was continuing to substitute teach at the time of the hearing,  but had only received one day of teaching in 2010.  (R. at 30–31.)  He stated that he applied for many jobs, but had not been able to find work.  (R. at 31–32.)

2

Plaintiff reported chronic back and hip pain, as well as trouble sleeping.  (R. at 32, 33.) He used a CPAP machine due to his sleep apnea, but noted that the machine did not always work because of his sinus problems.  (R. at 32.)  He often turned the CPAP machine off after two to three hours.  (*Id.*)  Plaintiff testified that he "always" had problems with pain.  (R. at 33.)  At the hearing, he described his pain at a six to seven on an analog pain scale, which he indicated was his average pain level.  (R. at 33–34.)  He reported taking eighteen different medications and noted that it was hard for him to tell what the side effects were.  (R. at 34–36.)  He thought that the medications caused mood swings and bipolar problems.  (R. at 36.)  According to Plaintiff, he has difficulty focusing and concentrating, anger issues, and crying spells.  (R. at 37.)  He also reported that one of his doctor's diagnosed him with post-traumatic stress disorder due to witnessing accidents while serving in the military police.  (R. at 37–38.)

### III.  MEDICAL RECORDS

**A.      Veterans Administration Medical Center**

The record contains treatment records from the Veteran Affairs ("VA")  facilities in Columbus and Grove City, Ohio dated from May 2005 to January 2010.  (R. at 189–294, 317–421, 446–682, 719–810.)  Plaintiff received treatment for various physical issues including back problems, right hip problems, shoulder pain, sleep apnea, gastroesophageal reflux disease (GERD), hypertension, and obesity.  (*See id.*)  Testing from April and May of 2006 revealed mild degenerative joint disease in the lumbar spine and mild lower lumbar spondylosis.  (R. at 279–80.)  On July 20, 2006 testing of Plaintiff's thoracic spine revealed diffuse idiopathic skeletal hypertosis.  (R. at 278.)

Treatment notes reflect that Plaintiff was suffering from back pain, right shoulder pain,

and right hip pain in January 2007.  (R. at 519–20.)  Plaintiff received an orthopedic consultation

for complaints of back pain in March 2007.  (R. at 255.)  Upon physical examination, Plaintiff's

physician noted markedly poor extension in the lumbar region; decreased side bending; and

limited rotation through the thoracic spine.  (*Id.*)  The physician further noted multiple findings of

tenderness.  (R. at 256.)  The treatment notes indicated, however, that Plaintiff's back condition

was improving.  (*Id.*)

        In July 2007, Plaintiff complained of both neck and back pain.  (R. at 239.)  Physical

examination revealed no spinal or lumbar spine tenderness; mild paraspsinal spasm; and some

tenderness in the right flank area.  (*Id.*)  In November 2007, Plaintiff hurt his right shoulder and

back after falling off a ladder, and received pain medication.  (R. at 214–15.)  On April 22, 2008,

Plaintiff was diagnosed with sleep apnea and prescribed a CPAP machine to help him sleep at

night.  (R. at 675–76.)  Treatment notes from July 2008 reflect that Plaintiff was having problems

tolerating the CPAP unit.  (R. at 670.)  In particular, Plaintiff reported waking up with nasal

congestion after two hours and taking the unit off.  (*Id.*)  A VA physician advised Plaintiff  to

gradually use the unit for longer time periods.  (*Id.*)  In August 2007, a physician's assistant

reported Plaintiff had a full range of motion in his upper and lower extremities.  (R. at 234.)

Plaintiff underwent an examination with his primary care physician on September 15, 2008.  (R.

at 656.)  At this time Plaintiff was using the CPAP unit "with some success."  (*Id.*)  Nevertheless,

Plaintiff's chronic back pain was not well controlled by his medication.  (R. at 656, 660.)

**B.      Vinutha C. Reddy, M.D.**

        Plaintiff treated with psychiatrist Vinutha C. Reddy, M.D., through the VA Outpatient

Clinic from October 27, 2003 through August 18, 2009.  (R. at 189–294, 422–25, 719–47, 760.)

                                                    4

Over this period, Plaintiff received treatment for bipolar disorder.  (*Id.*)

On October 17, 2007, Plaintiff reported to Dr. Reddy that he was doing quite well, despite quitting certain medications six months prior.  (R. at 216.)  Dr. Reddy reported at this time that Plaintiff had mood swings and mild depression, but stated that Plaintiff had appropriate affect and an organized thought process without thoughts of suicide or homicide.  (*Id.*)  Dr. Reddy diagnosed Plaintiff with dysthymia and bipolar disorder, and assigned a Global Assessment of Functioning ("GAF") score of 55.[1]  (R. at 216.)  By January 2008, Dr. Reddy noted that Plaintiff's condition had improved with medication and she assigned Plaintiff a GAF score of 60. (R. at 354.)

In April 2008, Dr. Reddy submitted a form regarding Plaintiff's condition.  (R. at 423–25.)  She diagnosed Plaintiff with bipolar disorder.  (R. at 425.)  She reported that Plaintiff was able to perform daily activities.  (R. at 424.)  Dr. Reddy opined that Plaintiff was capable of interacting with co-workers well most of the time, although she did note Plaintiff's tendency to give opinions that would offend others.  (*Id.*)  Dr. Reddy characterized Plaintiff's depression as mild and suggested that Plaintiff's depression had been worse from 2004 to 2006.  (*Id.*)  Dr. Reddy indicated that Plaintiff's concentration and focus were problematic.  (R. at 425.)  She concluded that Plaintiff would be able to tolerate the stress of work well.  (*Id.*)

Plaintiff saw Dr. Reddy again on April 13, 2009.  (R. at 727–29.)  Plaintiff reported that

---

[1]  "GAF examinations measure psychological, social, and occupational functioning on a continuum of mental-health status from 0 to 100, with lower scores indicating more severe mental limitations."  *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 276 (6th Cir. 2009).  A GAF score of 51–60 indicates moderate symptoms such as flat affect and circumstantial speech, or suggests moderate difficulty in social, occupational, or school functioning. *See* American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) 33–34 (American Psychiatric Association, 4th ed. text rev. 2000).

he had run out of medication and that his anger was coming back. (R. at 727.) He had recently lost his job as a substitute teacher due to an argument with the school principal. (*Id.*) During the exam, Dr. Reddy noted that Plaintiff was cooperative with no symptoms of depression, but did show signs of mood swings. (*Id.*) She assigned Plaintiff a GAF score of 65 and adjusted his medication.[2] (R. at 727.)

**C.     Arthur M. Schmit, D.C.**

Plaintiff treated with chiropractor, Arthur M. Schmit, D.C., from February to April 2009. (R. at 684–90, 699–718.) Dr. Schmit found that Plaintiff had some decreased range of motion in his back with pain, but could walk without difficulty. (R. at 699.) Following initial examination Dr. Schmit diagnosed Plaintiff with subluxation of the cervical, thoracic, and lumbar spine; cervical and lumbar facet syndrome; tendonitis of the right shoulder; and carpal tunnel syndrome. (R. at 700.) On April 20, 2009, after completing his approved course of chiropractic treatment for back and neck pain, Dr. Schmit reported that Plaintiff's pain was reduced. (R. at 716.) Plaintiff indicated that chiropractic care had improved his overall condition, but that he was not asymptomatic. (*Id.*) Dr. Schmit concluded that Plaintiff would benefit from periodic supportive treatment. (*Id.*)

**D.     State Agency Evaluations**

**1.     W. Jerry McCloud, M.D.**

In December 2007, state agency physician W. Jerry McCloud, M.D., reviewed the record and assessed Plaintiff's physical functioning capacity. (R. at 295–302.) Dr. McCloud opined that

---

[2]  "GAF scores in the range of 61–70 are intended to indicate some mild symptoms or some difficulty in social, occupational, or school functioning . . . ." *Karger v. Comm'r of Soc. Sec.*, 414 F. App'x 739, 745 (6th Cir. 2011).

Plaintiff could lift and carry fifty pounds occasionally and twenty-five pounds frequently; stand and/or walk about six hours in an eight-hour day; and sit for about six hours in an eight-hour day. (R. at 296.)  Dr. McCloud observed that Plaintiff's allegations of pain were not fully supported by the medical record.  (R. at 300.)  Myung Cho, M.D., affirmed Dr. McCloud's evaluation on July 16, 2008.  (R. at 445.)

### 2.    Leslie Rudy, Ph.D.

On January 4, 2008, state agency psychologist Leslie Rudy, Ph.D., reviewed the record and found insufficient evidence to evaluate Plaintiff's mental impairments. (R. at 303-16.)  Dr. Rudy's determination was based on a lack of response from that treating source and Plaintiff's failure to cooperate.  (R at. 315.)

### 3.    Kevin Edwards, Ph.D.

In May 2008, Kevin Edwards, Ph.D., a state agency psychologist, reviewed Plaintiff's record and completed a Mental Residual Functional Capacity Assessment.  (R. at 427-30.) Dr. Edwards opined that Plaintiff had moderate limitations in several areas including his ability to remember locations and work-like procedures; to understand, remember and carry out detailed instructions; to maintain attention and concentration for extended periods; to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; to work in  coordination with or proximity to others without being distracted by them; to complete a normal workday or workweek without interruption from psychologically based symptoms; to accept and respond appropriately to criticism from supervisors; and to respond appropriately to changes in the work setting.  (R. at 427–28.)  Based on Dr. Reddy's treatment records and opinions, which he gave weight, Dr. Edwards concluded that Plaintiff retained the ability to

perform simple, routine tasks that do not have strict production quotas or frequent contact with the public.  (R. at 429.)

Dr. Edwards also completed a Psychiatric Review Technique.  (R. at 431-44.)  He concluded that Plaintiff had moderate restrictions of daily living; mild difficulties in maintaining social functioning; and moderate difficulties in maintaining concentration, persistence and pace. (R. at 441.)

**E.     New Evidence**

Plaintiff indicates that he submitted additional evidence to the Appeals Council following the ALJ's decision.  Plaintiff has attached this material to his Statement of Errors.  (*See* Statement of Errors 16–22, ECF No. 13.)  The additional evidence consists of Dr. Reddy's August 18, 2009 treatment notes and a mental impairment questionnaire that Dr. Reddy completed on April 20, 2011.

The treatment notes reflect that during the August 2009 session Plaintiff reported crying spells, lack of focus and concentration, sleep disturbance, and feelings of depression with lack of desire and motivation.  (*Id.* at 21.)  Dr. Reddy concluded that despite treatment, Plaintiff's symptoms were "affecting his work as a substitute teacher."  (*Id.* at 22.)

Within the mental impairment questionnaire, Dr. Reddy reported that Plaintiff had been seen every three months at the VA for mental issues since October 27, 2003.  (*Id.* at 17.)  Dr. Reddy indicated that Plaintiff had lost about six substitute teaching positions in the past three years due to an irritable mood.  (*Id.* at 20.)  Dr. Reddy diagnosed Plaintiff with bipolar disorder and opined that he was not a malingerer.  (*Id.* at 17, 20.)  Dr. Reddy further opined that Plaintiff had no restrictions on his activities of daily living; no difficulty maintaining social functioning;

mild deficiencies in concentration, persistence or pace; and no episodes of decompensation.  (*Id.* at 19.)

## IV. EXPERT TESTIMONY

Carl W. Hartung testified as a vocational expert at the February 2010 administrative hearing.  (R. at  25-26, 39-42.)  According to Mr. Hartung, Plaintiff's past jobs included security guard, which he classified as semi-skilled and light, and substitute teacher, which he classified at the skilled and light exertional level.  (R. at 25–26.)

The ALJ asked Mr. Hartung to consider a person who was limited to lifting or carrying ten pounds frequently, twenty pounds occasionally, standing and walking about six hours in an eight hour day, with normal breaks, and sitting for six hours.  (R. at 39.)  Mr. Hartung concluded that such a person could perform Plaintiff's past relevant work as a security guard and substitute teacher. (*Id.*)

Plaintiff's counsel asked Mr. Hartung to consider an individual who was limited to low stress work.  (R. at 41.)  Mr. Hartung responded that such a description would reduce such a person to unskilled work.  (*Id.*)  Mr. Hartung testified that the security job was classified as semi-skilled, so that job would be eliminated.  (*Id.*)  Mr. Hartung's response to this line of questioning was less clear as to the substitute teacher position, although he indicated that according to the *Dictionary of Occupational Titles* (DOT), a substitute teacher does not have any stress.  (*See* R. at 42.)

## V.  ADMINISTRATIVE DECISION

The ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act in his May 24, 2010 decision.  The ALJ found that Plaintiff met the insured status

requirements of the Social Security Act through December 31, 2011.  (R. at 9.)  At the first step

of the sequential evaluation process,[3] the ALJ found that Plaintiff had engaged in substantial

gainful activity during the following periods: January 2008 through May 2008 and September

2008 through March 2009, while working as a substitute teacher.  (*Id.*)  Nevertheless, the ALJ

found there had been a continuous 12-month period during which Plaintiff did not engage in

substantial gainful activity.  (R. at 10.)

Next, the ALJ found that Plaintiff had the severe impairments of degenerative disc disease

of the spine; degenerative joint disease of the right hip; and obesity.  (*Id.*)  The ALJ concluded,

however, that Plaintiff did not have a severe mental impairment because Plaintiff's mood disorder

did not cause more than minimal limitations in his ability to perform work activities.  (*Id.*)  The

ALJ determined that Plaintiff had no limitations in activities of daily living; mild limitations in

social functioning; mild limitations in concentration, persistence, or pace; and no episodes of

---

[3]  Social Security Regulations require ALJs to resolve a disability claim through a
five-step sequential evaluation of the evidence.  *See* 20 C.F.R. §404.1520(a)(4).  Although a
dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d
727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five
questions:

    1.      Is the claimant engaged in substantial gainful activity?
    2.      Does the claimant suffer from one or more severe impairments?
    3.      Do the claimant's severe impairments, alone or in combination, meet or
            equal the criteria of an impairment set forth in the Commissioner's Listing
            of Impairments, 20 C.F.R. Subpart P, Appendix 1?
    4.      Considering the claimant's residual functional capacity, can the claimant
            perform his or her past relevant work?
    5.      Considering the claimant's age, education, past work experience, and
            residual functional capacity, can the claimant perform other work
            available in the national economy?

*See* 20 C.F.R. §404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009);
*Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

decompensation. (*Id.*) At step three, the ALJ then determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 11.)

At step four of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity ("RFC"). The ALJ concluded that Plaintiff had the ability to perform the full range of light work. (R. at 12.) In reaching his conclusions regarding Plaintiff's RFC, the ALJ found Plaintiff's statements regarding his symptoms to be not entirely credible to the extent they were more severe than the ALJ's RFC assessment. (R. at 13.)

Based on the above RFC, and the vocational expert's testimony, the ALJ found that Plaintiff could perform his past relevant work as a substitute teacher. (R. at 14.) Accordingly, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 15.)

## VI. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial.  The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the [Commissioner's] decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  Finally, even if the Commissioner's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'"  *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VII. LEGAL ANALYSIS

Within his Statement of Errors, Plaintiff raises various contentions.  First, Plaintiff contends that the ALJ erred in finding that his mental impairments were not severe.  Second, Plaintiff maintains that the ALJ failed to provide a proper hypothetical question to the vocational expert.  Third, Plaintiff contends that the ALJ erred in assessing his credibility.  Finally, although not explicitly argued, Plaintiff attempts to present new evidence to the Court.

### A.     Substantial Gainful Activity

As a preliminary matter, the Court must address the relevant time period for consideration. The Social Security Act defines disability "as the inability to do any substantial gainful activity . . . for a continuous period of not less than 12 months."  20 C.F.R. §§ 404.1505(a),

416.905(a).  Consequently, to determine whether an individual is disabled, an ALJ first considers whether a claimant is engaging in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  If a claimant is engaging in substantial gainful activity he or she will not be disabled, regardless of the medical evidence.  20 C.F.R. §§ 404.1520(b), 416.920(b).

In this case, the ALJ determined that Plaintiff had engaged in substantial gainful activity following his alleged disability onset date.  In particular, despite Plaintiff's alleged onset date of July 20, 2007, the ALJ found that Plaintiff had engaged in substantial gainful activity from January 2008 through May 2008 and September 2008 through March 2009.  The ALJ based this determination on Plaintiff's testimony regarding his work as a substitute teacher and related earnings records.  The ALJ found, however, that there had been a continuous twelve month period during which Plaintiff did not perform substantial gainful activity.  Presumably, given the alleged onset date and the ALJ's findings, this period began in April 2009.

Although Plaintiff's briefing implies, in passing, that he finds the ALJ's substantial gainful activity determination to be questionable, he fails to develop any argument on the issue.  Accordingly, the undersigned finds that Plaintiff has waived consideration of this issue.  *See Rice v. Comm'r of Soc. Sec.*, 169 F. App'x 452, 454 (6th Cir. 2006) ("It is well-established that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.") (internal quotations omitted).  Consequently, in reviewing the ALJ's decision, the Court will focus on Plaintiff's condition after March 2009.[4]

---

[4]  This is not to say, however, that evidence before this period is not relevant to Plaintiff's condition following March 2009.  The Court has, therefore, reviewed and discussed Plaintiff's medical records from the earlier period above.

**B.     Severe Mental Impairment**

As noted above, Plaintiff contends that the ALJ erred in concluding that he did not have a severe mental impairment.  Plaintiff stresses that the opinion evidence of both Drs. Reddy and Edwards contradict the ALJ's conclusion.  The Commissioner contends that the ALJ reasonably concluded that Plaintiff did not have a severe mental impairment and that any error in this regard was not reversible.

At step two of the sequential evaluation process, the Commissioner must consider whether a claimant has a severe impairment.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  "To surmount the step two hurdle, the applicant bears the ultimate burden of establishing that the administrative record contains objective medical evidence suggesting that the applicant was 'disabled,' as defined by the Act . . . ."  *Despins v. Comm'r of Soc. Sec.*, 257 F. App'x 923, 929 (6th Cir. 2007).  The Regulations generally define severe impairment as "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c), 416.920(c).  From a mental perspective, basic work activities include the ability to understand, carry out, and remember simple instructions; use judgment; respond appropriately to supervision, co-workers and usual work situations; and deal with changes in a routine work setting.  20 C.F.R. §§ 404.1521(b), 416.921(b).

The United States Court of Appeals for the Sixth Circuit has generally described step two of the evaluation process as "a *de minimus* hurdle."  *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 190 (6th Cir. 2009) (internal quotations omitted).  Accordingly, "an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience."  *Id.* (internal quotations omitted).  The mere

existence of impairments, however, does not establish significant limitation in "performing basic work activities for a continuous period of time." *Despins*, 257 F. App'x at 930. Furthermore, in considering whether a claimant has a severe impairment, an ALJ need not accept unsupported medical opinions or a claimant's subjective complaints. *McDaniels v. Astrue*, No. 1:10–CV–699, 2011 WL 5913973, at *4 (S.D. Ohio Nov. 28, 2011).

Finally, "[a]fter an ALJ makes a finding of severity as to even one impairment, the ALJ 'must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not severe.'" *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 577 (6th Cir. 2009) (quoting Soc. Sec. Rul. 96-3p, 1996 WL 374181 at *1 (July 2, 1996)). Consequently, the Sixth Circuit has provided that "when an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, an ALJ's failure to find additional severe impairments at step two does not constitute reversible error." *Id.* (internal quotations omitted).

In this case, substantial evidence supports the ALJ's determination that Plaintiff's mental impairments were not severe. Contrary to Plaintiff's suggestion, the bulk of the evidence from Dr. Reddy supports a finding that Plaintiff's mental impairments have little impact on his work abilities. Although Dr. Reddy diagnosed Plaintiff with bipolar disorder, her underlying findings concerning Plaintiff's functioning are relatively mild. For example, in April 2008 Dr. Reddy concluded that, from a mental perspective, Plaintiff was capable of performing "all" daily activities; generally got along well with co-workers; and tolerated stress well both in the context of routine daily stressors as well as work-place stressors. Furthermore, Dr. Reddy indicated that Plaintiff's depression was only mild, and that Plaintiff had actually endured worse depression from 2004 to 2006. Although Dr. Reddy noted that Plaintiff's concentration was problematic, the

ALJ accounted for this by finding Plaintiff mildly limited in concentration, persistence, or pace. Finally, Dr. Reddy's April 2009 treatment notes—the only evidence, concerning mental impairment, from the actual period in question—reflect minimal findings. Specifically, despite the fact that Plaintiff had been off medication for three weeks, Dr. Reddy assigned Plaintiff a GAF of 65 at this time, indicating only mild symptoms.

Other non-medical evidence from the record also supports the ALJ's conclusion that Plaintiff's mental impairments had little affect on his work abilities. Based largely on Plaintiff's work history, the ALJ concluded that Plaintiff had no more than mild limitations in daily activities, social functioning, and concentration, as well as no episodes of decompensation. *See* 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1) (indicating that if limitations in these areas are mild or none, a finding of no severe impairments generally follows). As detailed above, the record indicates that Plaintiff was able to perform a significant amount of work as a substitute teacher during 2008 and 2009.[5] Nothing in the medical evidence, however, suggests that his mental condition became worse after this time. Notably, the vocational expert categorized this substitute teaching work as skilled. Furthermore, Plaintiff was continuing to seek substitute teaching work at the time of the 2010 administrative hearing.

In concluding that Plaintiff had no severe impairments, the ALJ implicitly rejected the opinions of reviewing psychologist Dr. Edwards. Based on his review of Dr. Reddy's April 2008 report, Dr. Edwards opined that Plaintiff had moderate limitations in daily activities, moderate

---

[5] The record evidence does indicate that Plaintiff had trouble staying with a particular school district. Nevertheless, the record also suggests at least some non-disability related reasons for Plaintiff's difficulties, including his tendency to be strict due to his military background. (*See* R. at 29.)

16

restrictions in concentration, but retained the ability to perform simple, routine tasks. A review of the evidence, however, reflects that Dr. Edwards opinions are questionable, as they reflect a severe interpretation of Dr. Reddy's report. For example, Dr. Edwards concluded that Plaintiff had moderate restrictions of daily living despite Dr. Reddy's conclusion that Plaintiff could perform all daily activities. Additionally, Dr. Edwards limited Plaintiff to simple and routine tasks even though Dr. Reddy provided that Plaintiff handles work stressors well. Finally, Dr. Edwards issued his opinions in May 2008, almost a year before the period in question, and without the benefit of Dr. Reddy's April 2009 treatment notes.

Even assuming, however, that the ALJ should have found Plaintiff's mental impairments to be severe, this alone does not constitute reversible error. The ALJ found other severe impairments in this case and, therefore, assessed Plaintiff's RFC. The RFC assessment differs from the severe impairment consideration, because a claimant's RFC must account for both severe and non-severe impairments, and reflects "the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a). In light of these different standards, and "[g]iven the very broad definition of what constitutes a severe impairment at Step Two, it is not *per se* inconsistent for a severe impairment to result in relatively minor work restrictions." *Thomas v. Astrue*, No. 1:10–cv–1777, 2011 WL 4496533, at *5 (N.D. Ohio Sept. 27, 2011). Here, even assuming the ALJ should have considered Plaintiff's mental impairments to be severe, based on the medical evidence from Dr. Reddy as well as Plaintiff's work history, the ALJ was justified in excluding any mental limitations from his RFC assessment.

## C.    **Vocational Testimony**

Plaintiff also maintains that the ALJ erred by relying on the vocational expert's testimony

to conclude that she could perform her past relevant work.  Plaintiff contends that the ALJ should

have included mental limitations within his hypothetical question.  Additionally, Plaintiff asserts

that the ALJ should not have considered Plaintiff's job as a security guard to be past relevant

work.

The undersigned finds both of Plaintiff's contentions unpersuasive.  First, the ALJ was

justified in omitting mental limitations from his hypothetical question.  "Hypothetical questions

. . . need only incorporate those limitations which the ALJ has accepted as credible." *Parks v. Soc.*

*Sec. Admin.*, 413 F. App'x 856, 865 (6th Cir. 2011).  In this case, for the reasons described above,

the ALJ reasonably concluded that Plaintiff's mental limitations did not significantly affect his

ability to work.  Accordingly, the ALJ was not required to include mental limitations within his

hypothetical question to the vocational expert.

Second, the ALJ's consideration of Plaintiff's security guard position does not constitute

reversible error.  Even assuming that the ALJ should not have included security guard within

Plaintiff's past relevant work, he did not ultimately rely on this position in concluding that

Plaintiff could perform past relevant work.  Rather, the ALJ concluded that Plaintiff could

perform past relevant work because he was capable of working as a substitute teacher.

**D.      Credibility**

In his final contention of error, Plaintiff asserts that the ALJ erred in assessing his

credibility.  Specifically, Plaintiff contends that the ALJ failed to consider relevant credibility

factors pursuant to the Regulations.

"The ALJ's assessment of credibility is entitled to great weight and deference, since he [or

she] had the opportunity to observe the witness's demeanor." *Infantado v. Astrue*, 263 F. App'x

18

469, 475 (6th Cir. 2008). Despite this deference, "an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Walters v. Comm'r Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Furthermore, the ALJ's decision on credibility must be "based on a consideration of the entire record." *Rogers*, 486 F.3d at 247 (internal quotation omitted).

"Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531. Furthermore, in addition to evaluation of the objective medical evidence, the Regulations list a variety of factors an ALJ must consider in evaluating the severity of symptoms including a claimant's daily activities; the effectiveness of medication; and treatment other than medication. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *but see Ewing v. Astrue*, No. 1:10–cv–1792, 2011 WL 3843692, at *9 (N.D. Ohio Aug. 12, 2011) (suggesting that although an ALJ is required to consider such factors, he or she is not required to discuss every factor within the written decision) (Report and Recommendation later adopted).

In this case, the ALJ did not err in assessing Plaintiff's credibility. The ALJ did not completely discount Plaintiff's credibility. Rather, after summarizing Plaintiff's testimony, the ALJ found that Plaintiff was not credible to the extent his statements were inconsistent with the assigned RFC. In justifying this finding, the ALJ provided a detailed analysis indicating that the objective medical evidence did not support the severity of the symptoms that Plaintiff alleged.[6] In addition to the objective medical evidence, the ALJ noted that Plaintiff engaged in significant levels of work past his alleged onset date, and was continuing to seek work as a substitute teacher

---

[6] Notably, state agency physician Dr. McCloud also opined that the medical record did not fully support Plaintiff's allegations of pain. (R. at 300.)

19

at the time of the administrative hearing.  Finally, the ALJ emphasized that Plaintiff had failed to follow his physicians' instructions with regard to treatment through his CPAP unit.  Contrary to Plaintiff's suggestions, this review indicated the ALJ's reasons for discounting Plaintiff testimony and demonstrated that the ALJ had considered the relevant factors in assessing Plaintiff's credibility

Furthermore, substantial evidence supports the ALJ's credibility finding.  Perhaps most importantly, the record demonstrates that Plaintiff was actively working after his alleged disability onset date and was still seeking work at the time of the hearing in February 2010.  When combined with the medical evidence, this evidence allowed the ALJ to reasonably infer that, despite Plaintiff's testimony, his symptoms were not work prohibitive.  Although Plaintiff implies that his mental impairments left him unable to maintain his substitute teaching employment, the record suggests that other factors, such as strictness due to a military background, played a role in Plaintiff's removal from certain positions.  Finally, as the ALJ noted, Plaintiff's failure to gradually increase his CPAP use, as his doctor instructed, provides at least some reason to think Plaintiff's impairments in this area were not as severe as he alleged.  Under these circumstances, and given the ALJ's general discretion in this area, the undersigned finds that the ALJ was reasonable in concluding that Plaintiff was not entirely credible.

In contesting the ALJ's credibility finding, Plaintiff emphasizes that his strong work history supports a finding that he is credible.  The undersigned agrees that Plaintiff's generally strong work record up to 2007 provides at least some support for his credibility.  Nevertheless, Plaintiff still fails to demonstrate that the ALJ's credibility decision was unreasonable.  After all, Plaintiff's work history cuts in both directions.  Once again, the fact that Plaintiff engaged in

significant work past his alleged onset date, and continued to actively seek employment at the time of the administrative hearing, provides grounds for discounting Plaintiff's credibility.

**E.      New Evidence**

        In addition to his contentions of error, Plaintiff faults the Appeals Council for failing to consider evidence that was not before the ALJ.  Plaintiff attaches this evidence to his Statement of Errors.  These circumstances could be construed as a request for a remand due to new and material evidence pursuant to 42 U.S.C. § 405(g).  The undersigned finds that Plaintiff has failed to meet the requirements for any such remand.

        As the Sixth Circuit "has repeatedly held[,] . . . evidence submitted to the Appeals Council after the ALJ's decision cannot be considered part of the record for purposes of substantial evidence review." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  Nevertheless, pursuant to sentence six of § 405(g), a Court may remand a case "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .  42 U.S.C. § 405(g).  The Sixth Circuit has recently provided the following guidance with regards to the requirements of a sentence six remand:

> "[E]vidence is new only if it was 'not in existence or available to the claimant at the time of the administrative proceeding.'" *Foster*, 279 F.3d at 357 (quoting *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990)).  Evidence is "material" if it "would likely change the Commissioner's decision."  *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007); *see Sizemore v. Sec'y Health & Hum. Servs.*, 865 F.2d 709, 711 (6th Cir. 1988).  In order to prove "good cause," a Claimant must "demonstrat[e] a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Foster*, 279 F.3d at 357; *Willis v. Sec'y Health & Hum. Servs.*, 727 F.2d 551, 554 (1984) (per curiam).  This includes detailing the obstacles that prevented the admission of the evidence.  *Bass*, 499 F.3d at 513.  The mere fact that evidence was not in existence at the time of the ALJ's decision does not necessarily satisfy the "good cause" requirement.  This Court takes "a harder line on the good cause test" with respect to timing and thus requires that the claimant "give a valid reason for his failure to obtain evidence prior to the hearing." *Oliver v. Sec'y*

*of Health & Hum. Servs.*, 804 F.2d 964, 966 (6th Cir. 1986).  When we grant a sentence-six motion, we neither affirm nor reverse the ALJ's decision, but simply remand for further fact-finding.  *Melkonyan*, 501 U.S. at 98.

*Courter v. Comm'r of Soc. Sec.*, No. 10–6119, 2012 WL 1592750, at *11 (6th Cir. May 7, 2012).

Here, Plaintiff has failed to meet the requirements of a sentence six remand.  As detailed above, Plaintiff attaches non-record evidence to his Statement of Errors consisting of Dr. Reddy's August 18, 2009 treatment notes and a mental impairment questionnaire that Dr. Reddy completed on April 20, 2011.  Even assuming such evidence is new and material, Plaintiff fails to show good cause.  Plaintiff provides no reason why she was unable to obtain this evidence, including any potential evaluation from Dr. Reddy, prior to the February 2010 hearing or the May 2010 administrative decision.

## VIII.  CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that the Court **AFFIRM** the decision of the Commissioner.

## IX.  NOTICE

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Response to objections must be filed within fourteen (14) days after being served with a copy.  Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and

waiver of the right to appeal the judgment of the District Court.  *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816*, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

Date:   July 24, 2012                              /s/ *Elizabeth A. Preston Deavers*
                                                       Elizabeth A. Preston Deavers
                                                       United States Magistrate Judge